

RECEIVED
SEP 2 9 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| Angela Smith, et al | Civil Action No. 6:07-0681 |
| versus | Judge Tucker L. Melançon |
| American Family Life Ins. Co. of Columbus | Magistrate Judge Methvin |

## MEMORANDUM RULING

Before the Court are cross motions for summary judgment filed by plaintiff, Angela Smith [Rec. Doc. 50] and defendant American Family Life Insurance Company of Columbus' ("Aflac") [Rec. Doc. 35]. Also before the Court is a motion for partial summary judgment filed by Aflac to dismiss plaintiff's claims against Aflac for bad faith penalties and attorney's fees [Rec. Doc. 45].[1] For the reasons that follow, plaintiff's motion for summary judgment will be granted and defendant's motion for summary judgment will be denied. Also, defendant's motion for partial summary judgment will be granted.

### I. Background

Plaintiff Angela Smith purchased an Accident Insurance policy, Policy Number PB694954, issued by Aflac with an effective date of May 20, 2004, covering herself and her spouse, Darryl Smith, as named insureds ("the Policy"). The Policy provides different lump-sum benefit amounts for accidental death depending on how the accident that caused the death at issue was classified. In the event that the death of the named insured occurred as a result of injuries sustained in a covered accident and within 90 days of the covered accident, the beneficiary

---

[1] Also before the Court is Aflac's opposition [52] and supplemental response [67] to plaintiff's motion, plaintiff's opposition [48] and supplemental response [68] to Aflac's motion and plaintiff's opposition [49] to Aflac's motion for partial summary judgment.

would receive either (a) $150,000 under "Common-Carrier Accidents" or (2) $40,000 under "Other Accidents."

The parties do not dispute the following facts. Plaintiff's husband, Darryl Smith, a former employee of Island Operating Company, Inc., died in a helicopter crash on March 14, 2006, while being transported to an offshore worksite. Plaintiff signed a Proof of Death-Beneficiary's Statement on April 10, 2006, verifying the death of her husband, and submitted same to Aflac.

On or about May 23, 2006, Aflac issued plaintiff a check in the amount of $40,000 for the "accident death" of Darryl Smith, claim number 918702559. Via correspondence dated July 18, 2006, plaintiff's legal counsel notified Aflac that plaintiff should have been paid $150,000 under the Common-Carrier Accident provision in the Policy. Aflac responded to plaintiff on August 11, 2006, that "as the helicopter involved in this crash was not a common-carrier vehicle, as defined and limited by the terms of this policy, the death benefit for Common-Carrier Accidents is not applicable. Therefore, additional benefits are not payable for this claim."

Plaintiff originally filed this action on or about March 9, 2007 in the Sixteenth Judicial District Court, St. Mary Parish, State of Louisiana. Defendants filed a Notice of Removal to this Court on April 16, 2007. *R. 1.* In her Complaint, plaintiff alleges that the helicopter crash which claimed the life of her husband, an insured under the Policy, was a "Common-Carrier Accident" and Aflac therefore owes plaintiff an additional $110,000 on the $150,000 death benefit. Plaintiff further alleges that Aflac's refusal to interpret its policy pursuant to Louisiana law, subjects it to penalties for bad faith pursuant to LSA R.S. 22:657.

## II. Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[2] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue

---

[2] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id*

### III. Analysis

#### 1. The Cross Motions For Summary Judgment

In its motion for summary judgment, Aflac contends that the Policy contains "clear language and straight-forward requirements and limitations" which place an explicit limitation on the types of vehicles considered common-carriers under the Policy. Because a helicopter is not a listed common-carrier vehicle under the Policy, Aflac asserts that plaintiff was owed only $40,000 in benefits for her husband's death as covered in the Policy under "Other Accidents" and Aflac paid those benefits to plaintiff on May 23, 2008.

Plaintiff maintains in her cross motion for summary judgment that under the terms of the Policy, her husband's death was covered under the Policy's definition of "Common-Carrier Accidents" and Aflac should have paid her $150,000 in benefits. Plaintiff asserts that the Policy's definition of "Common-Carrier Accidents" is ambiguous, which renders Aflac's interpretation of the Policy incorrect and requires an interpretation that effects coverage for the plaintiff.

The parties agree that Louisiana law governs interpretation of the Policy. "The Louisiana Supreme Court recently announced a number of helpful rules [] in interpreting insurance policies. *See generally Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La.2003). Under Louisiana law, an 'insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.' *Id.* (citations omitted). 'The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.' *Id.* (citing, *inter alia*, La. Civ.Code art. 2045). 'Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.' *Id.* (citing, *inter alia*, La. Civ.Code art. 2047). 'The determination of whether a contract is clear or ambiguous is a question of law.' *Id.* (citation omitted)." *Weaver v. CCA Industries, Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

"'The words of a contract must be given their generally prevailing meaning.' La. Civ.Code Ann. art. 2047 (1987); *see also Cadwallader*, 848 So.2d at 580. 'When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.'

La. Civ.Code Ann. art. 2046 (1987). 'If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written.' *Cadwallader*, 848 So.2d at 580.

Where, however, an insurance policy includes ambiguous provisions, the '[a]mbiguity ... must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions.' *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La., 1994) (citing La. Civ.Code Ann. art. 2050 (1987) ('Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.')). 'Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract.' La. Civ.Code Ann. art. 2048 (1987). 'A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.' *Id.* art. 2049 (1987).

Ambiguity may also be resolved through the use of the reasonable-expectations doctrine-i.e., 'by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered.' *La. Ins. Guar. Ass'n*, 630 So.2d at 764 (quoting *Breland v. Schilling*, 550 So.2d 609, 610-11 (La.1989)). 'The court should construe the policy to fulfill the reasonable expectations of the parties in light of the customs and usages of the industry.' *Id.* (quoting *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 269 (5th Cir.1990)). 'A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation

of the contract, and of other contracts of a like nature between the same parties.' La. Civ.Code Ann. Art. 2053 (1987).

'If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured.' *La. Ins. Guar. Ass'n*, 630 So.2d at 764. Article 2056 of the Louisiana Civil Code provides: 'In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.' La. Civ.Code Ann. art. 2056 (1987). 'Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer.' *Cadwallader*, 848 So.2d at 580. 'That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.' *Id*. The fact that a term is not defined in the policy itself does not alone make that term ambiguous. *Am. Deposit Ins. Co. v. Myles*, 783 So.2d 1282, 1287 (La.2001).

'An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion.' *Cadwallader*, 848 So.2d at 580. 'Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in

7

unambiguous terms.' *Id.*" *In re Katrina Canal Breaches Litigation,* 495 F.3d 191, 207-208 (5th Cir. 2007).

The issue before the Court is whether or not the Policy's definition of the term "Common-Carrier Accidents" excludes the helicopter accident at issue. In its motion for summary judgment, Aflac asserts that because plaintiff's husband was riding in a helicopter, his death is not covered under the Policy as a "Common-Carrier Accident" for which she could recover $150,000.00. Instead, plaintiff is entitled only to $40,000.00 for deaths occurring as a result of "Other Accidents."

The Policy defines "Common-Carrier Accidents" in Part 1, <u>Definitions</u>, section E which states as follows:

> [A]ccidents that occur on or after the Effective Date of coverage and while coverage is in force directly involving a vehicle in which a covered person is a passenger at the time of the accident and which is duly licensed by a proper authority to transport passengers for a fee. Common-carrier vehicles are limited to airplanes, trains, buses, trolleys, and boats that operate on a regularly scheduled basis between predetermined points or cities. **A taxi is not a common carrier vehicle.** (Emphasis in original.)

The foregoing definition purports to limit coverage for "Common-Carrier Accidents" to those accidents involving "common-carrier vehicles." The Policy does not define "common-carrier vehicles", but rather, provides a list which "limits" such vehicles to "airplanes, trains, buses, trolleys and boats." The next sentence, however, qualifies the list by stating that a vehicle which is not listed, a "taxi", is not included in the definition of "common-carrier vehicles." Because Aflac added the statement that a taxi, an unlisted vehicle, is not included as a "common-carrier vehicle", the provision implies that the list is non-exhaustive or illustrative rather

8

than limited to the five listed vehicles. Moreover, Aflac, the drafter of the provision, chose to specify only that "a taxi" was excluded as a common-carrier vehicle and failed to make any mention of a helicopter. Based on the failure of the Policy wording to clearly and unambiguously express the parties' intent as to the exclusion of "helicopters", the Court finds that the Policy provision is ambiguous. *See Hill v. Shelter Mut. Ins. Co.*, 935 So.2d 691, 694 (La., 2006)(citing *Crabtree v. State Farm Ins. Co.*, 632 So.2d 736, 745 (La., 1994)).

Where an insurance policy includes ambiguous provisions, the ambiguity must be resolved by construing the policy as a whole. One policy provision is not to be construed separately at the expense of disregarding other policy provisions. *In re Katrina Canal Breaches Litigation*, 495 F.3d at 207. The Policy contains two other provisions related to the definition of "Common-Carrier Accidents." Part 1, Definitions, section O, of the Policy defines "Other Accidents" as follows:

> Accidents that occur on or after the Effective Date of coverage and while coverage is in force that are not classified as Common-Carrier Accidents and that are not specifically excluded in the Limitations and Exclusions section. (Emphasis added).

Under Part 2, Limitations And Exclusions, section B., the Policy includes the other provision which addresses accident coverage for a policy holder being transported for a fee as with a common-carrier. Section B.9 of the Limitations and Exclusion provision states:

> B. We will not pay benefits for an accident or Sickness that is caused by or occurs as a result of a covered person's:
> . . .
> 9. Participating in any form of flight aviation other than as a fare-paying passenger in a fully licensed, passenger-carrying aircraft. (Emphasis added).

9

In this section, the Policy excludes any "flight aviation" other than a common-carrier "aircraft." The parties do not dispute that the term "aircraft" is not defined in the Policy. In such a case, the word should be given its plain, ordinary and generally prevailing meaning. *Sher v. Lafayette Ins. Co.*, — So.2d —, 2008 WL 928486 (La. 2008)(citing C.C. art. 2047). The most recent edition of *The American Heritage Dictionary of the English Language, Fourth Edition*, defines "aircraft" as, "A machine or device such as an airplane, helicopter, glider, or dirigible, that is capable of atmospheric flight." Thus, the Policy's "Limitations And Exclusions" provision must be interpreted to include coverage for helicopter accidents such as the one in this case.

Upon construing the Policy as a whole, the Court finds that because the Policy's "Limitations And Exclusions" provision provides coverage for accidents in which its insured is a "fare-paying passenger in a fully licensed, passenger-carrying" helicopter such as in this instance, it is reasonable to construe the Policy as providing such coverage under the definition of "Common-Carrier Accidents." A contrary construction would render the "Limitations and Exclusions" provision meaningless. One policy provision is not to be construed separately at the expense of disregarding other policy provisions. *In re Katrina Canal Breaches Litigation*, 495 F.3d at 207. Whether or not such construction is reasonable, however, the "Common-Carrier Accident" provision in the Policy remains ambiguous and therefore subject to further contract construction.

"If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions

seeking to narrow an insurer's obligation are strictly construed against the insurer. That strict construction principle, however, is subject to exceptions. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable." *Sher v. Lafayette Ins. Co.,* — So.2d —, 2008 WL 928486 *5 (La.,2008); *Cadwallader v. Allstate Ins. Co.,* 848 So.2d 577, (La.,2003)(citing *Carrier v. Reliance Ins. Co.,* 759 So.2d 37, 43 (La.,2000) (The court considered whether or not two or more reasonable interpretations existed for the term "covered auto" defined in the policy.).

The Court notes that ambiguity may also be resolved through the use of the reasonable-expectations doctrine-i.e., "by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *La. Ins. Guar. Ass'n,* 630 So.2d at 764. Plaintiff represents that she and her husband believed his helicopter travel was covered under the Policy because they had "negotiated" such with the insurance broker and because helicopter travel was not excluded in the Policy. *R. 50.* Plaintiff, however, provides no support for her representations and there is no evidence that plaintiff's expectations were clearly expressed and understood by Aflac. Thus, the reasonable-expectations doctrine is not applicable in the Court's analysis. *See In re St. Louis Encephalitis Outbreak in Ouachita Parish,* 939 So.2d 563 (La.App. 2 Cir. 2006).

Contrary to Aflac's position, it is not "clear" that helicopters are excluded from the list of vehicles covered under "Common-Carrier Accidents" because they

are not listed as one of the five vehicles in the definition. Instead, there are several reasonable alternative interpretations of "Common-Carrier Accidents" which apply in this case. First, the list could reasonably be interpreted to be exhaustive and therefore exclude helicopters because they are not listed as a common-carrier vehicle. Second, it is also reasonable, particularly when construing the Policy as a whole, to interpret the list as non-exhaustive or illustrative when considering that Aflac chose to qualify the list to specifically exclude "a taxi." That qualification indicates that other modes of transportation may be included in the definition. Finally, while the Policy does not otherwise mention "helicopters", it provides a general exclusion for any type of flight accident "<u>other than</u> as a fare-paying passenger in a fully licensed, passenger-carrying aircraft." The common meaning of "aircraft" includes a helicopter. Thus, it is also reasonable to extend the Policy's use of the term "aircraft" to the definition of "Common-Carrier Accidents" and include helicopters in the list of common-carrier vehicles.[3]

As the Court finds that the exclusionary provision in the definition of "Common-Carrier Accidents" is ambiguous and is susceptible of two or more reasonable interpretations, the strict construction rule applies in this case. Based on the foregoing, the Policy is deemed ambiguous and must be interpreted in favor of plaintiff and against Aflac, the party who furnished its text. *Ledbetter v. Concord Gen. Corp.*, 665 So.2d 1166, 1169 (La. 2006)("Exclusionary provisions in insurance

---

[3] In its opposition to plaintiff's motion, Aflac contends that plaintiff's reference to *Woolsey v. National Transp. Safety Bd.*, 993 F.2d 516 (5th Cir. 1993) and *Thibodeaux v. Executive Jet Int'l, Inc.*, 328 F.3d 742 (5th Cir. 2003) is misplaced as these cases involve interpretations of federal aviation regulations or other federal laws rather than Louisiana insurance policies. R. 52. As the Court has previously determined that the definition of "Common-Carrier Accidents" is ambiguous under Louisiana insurance contract construction law, the jurisprudentially created definitions of common carriers are inapplicable to this matter.

contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured."). Accordingly, plaintiff's motion will be granted and Aflac's motion will be denied.

*Aflac's Motion For Partial Summary Judgment*

Plaintiff alleges in her Third Supplemental and Amending Complaint, *R. 42*, that Aflac is liable for failure to timely settle her claim by making an unconditional tender of the "Common-Carrier" death benefit pursuant to the Policy. Plaintiff further alleges that because such failure was without just cause, Aflac acted arbitrarily and capriciously in violation of LSA R.S. 22:657(B). Aflac moves the Court to dismiss plaintiff's claim under 22:657(B) based on Aflac's reliance on the "plain language of the Policy" as provided in its motion for summary judgment.

LSA-R.S. 22:657(B) provides:

> B. All claims for accidental death arising under the terms of health and accident contracts where such contracts insure against accidental death shall be settled by the insurer within sixty days of receipt of due proof of death and should the insurer fail to do so without just cause, then the amount due shall bear interest at the rate of six percent per annum from date of receipt of due proof of death by the insurer until paid.

"Where an insurer has a reasonable ground to believe it has a valid defense, its refusal to pay a claim is not considered 'without just cause' subjecting it to penalties, even though subsequently that defense is not upheld by the court." *Moore v Central American Life Ins. Co.*, 535 So.2d 773 (La.App. 2 Cir., 1988). Statutes governing penalties for insurer's failure to timely pay insured's claims are penal in nature and must be strictly construed. *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d 1012, 1013 (La.,2003) Although the phrase, "without just cause" contained in LSA R.S. 22:657(B) is not defined in the jurisprudence, similar penal statutes, LSA

13

R.S. 22:658 and LSA R.S. 22:1220, require proof that the insurer was "arbitrary, capricious, or without probable cause," a phrase the courts have held is "synonymous with 'vexatious.'" *Id.* at 1013-14. The *Reed* court noted that "'vexatious refusal to pay' means unjustified, without reasonable or probable cause or excuse." *Id.*

Based on the foregoing analysis of the parties' motions for summary judgment related to the Policy's definition of "Common-Carrier Accidents", as well as the applicable law, the Court finds Aflac did not act without just cause in refusing to pay plaintiff's benefits under the "Common-Carrier Accidents" provision. Accordingly, the Court will grant Aflac's motion to dismiss plaintiff's claim under LSA R.S. 22:657(B).

*IV. Conclusion*

The Court finds that the Aflac Policy's definition of "Common-Carrier Accidents", as well as the list of "common-carrier vehicles" included in the definition, are ambiguous. As such, Aflac's motion for summary judgment must be denied and plaintiff's cross motion for summary judgment will be granted. As Aflac's refusal to pay plaintiff benefits under the Policy's definition of "Common-Carrier Accidents" was not without just cause, Aflac's motion for partial summary judgment will be granted.

COPY SENT:
DATE: 1-29-08
BY: aBL
TO: TLM
PJ